# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **SHAWN P. KELLY**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 10 C 4229 |
| **THE McGRAW-HILL COMPANIES, INC.**, a New York corporation, | ) ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Shawn Kelly ("Kelly") has sued McGraw-Hill Companies, Inc. ("McGraw"), to which Kelly served as an independent sales representative. Kelly asserted a host of theories of recovery, most of which were previously dismissed by this Court or withdrawn by Kelly. Still remaining at issue are McGraw's alleged breach of Kelly's most recent two-year Sales Representative Agreement (the "2008 Sales Agreement" or simply the "Agreement")[1] (Count I), Kelly's request for an accounting (Count IV) and McGraw's admitted failure to provide timely reimbursement to Kelly for certain job-related expenses (Count VI).

Kelly has now filed a motion for summary judgment as to (1) McGraw's refusal to pay Kelly commissions for the 2009 re-orders of McGraw products and (2) McGraw's failure to pay $7,755.16 in statutory prejudgment interest on the $29,843.30 in expenses from 2006, which were ultimately reimbursed in 2012.

---

[1] That document is reproduced as K. St. Ex. D (see n.2 for this opinion's shorthand definitions).

McGraw filed a cross-motion for summary judgment solely on the issue whether commissions were owed to Kelly on 2009 re-orders, and it agreed that in the event this Court found the issue to be contested in factual as well as legal terms, the Court should make a factual determination and rule accordingly. Thereafter the parties proceeded in accordance with this District Court's LR 56.1.[2] For the reasons stated here, Kelly's motion on the disputed issue is granted in its entirety and McGraw's cross-motion is denied.

## Summary Judgment Standard

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).[3] For that purpose courts consider the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to nonmovants (Egan Marine Corp. v. Great Am. Ins. Co. of N.Y., 665 F.3d 800, 811 (7th Cir. 2011)). But a nonmovant must produce more than

---

[2] LR 56.1 requires parties to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which facts are agreed upon. This opinion cites to McGraw's LR 56.1 statement as "M. St. ¶--," to Kelly's LR 56.1 statement as "K. St. ¶--" and to McGraw's response as "M. Resp. ¶--." When any response does not provide a version of the facts different from the original statement, this opinion cites only that original statement. Citations to McGraw's memorandum take the form "M. Mem. --."

[3] Ordinarily at the summary judgment stage, a nonmovant need not "establish" or "show" or "prove" anything, but must merely demonstrate that a genuine issue of material fact exists. Here, however, McGraw has agreed that this Court should resolve any such disputed issue of fact as to whether Kelly was indeed entitled to commissions on the 2009 re-orders of McGraw products.

"a mere scintilla of evidence" to support the position that a genuine issue of material fact exists and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (Carmichael v. Vill. of Palatine, Ill., 605 F.3d 451, 460 (7th Cir. 2010), quoting Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)). As Payne v. Pauley, 337 F.3d 767, 772-73 (7th Cir. 2003) has explained:

> [T]he Federal Rules of Civil procedure require the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Conclusory allegations, unsupported by specific facts, will not suffice.[4]

Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). What follows is a summary of the relevant facts.

---

[4] [Footnote by this Court] Lawyers (and regrettably judges) often lump "self-serving affidavits" into the category of submissions that are insufficient to overcome summary judgment. That blanket assertion is incorrect. Payne, 337 F.3d at 773 was careful to distinguish conclusory affidavits from merely self-serving ones:

> We hope this discussion lays to rest the misconception that evidence presented in a "self-serving" affidavit is never sufficient to thwart a summary judgment motion. Provided that the evidence meets the usual requirements for evidence presented on summary judgment -- including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial -- a self-serving affidavit is an acceptable method for a nonmoving party to present evidence of disputed material facts.

**Factual Background[5]**

Kelly worked as an independent sales representative for McGraw, which publishes educational materials (K. St. ¶¶1-2). As defined in Section 1 of the Illinois Sales Representative Act (the "Act," 820 ILCS 120/1), Kelly is a "sales representative" and McGraw is a "principal" (id.).

Under an earlier version of the Agreement McGraw agreed to reimburse Kelly for $50,000 in marketing expenses incurred in 2006 (K. St. ¶7). McGraw's Regional Vice President Craig Scott ("Scott") acknowledged in a July 25, 2007 letter that Kelly had incurred those expenses at Scott's "express direction" (id. ¶8). Nevertheless, before March 2012 McGraw had reimbursed Kelly for only $20,156.70 of the agreed-upon $50,000 (id. ¶9). On March 8, 2012 McGraw wired the remaining $29,843.30 into Kelly's account, but without interest (id.). After Kelly filed the present motion, McGraw paid him the $7,755.16 in interest that he had requested (M. Mem. 13).

To shift to a matter still in controversy, before the 2008 Sales Agreement was signed Kelly had made a written offer to Bodie Marx ("Marx"), a Senior Vice President and National Sales Manager at McGraw, to waive commissions on 2009 re-orders or "residual" business in California in exchange for (1) a 15% commission rate on new sales and (2) McGraw's agreement to cover certain expenses, such as shipping costs (Kelly 6/29/11 Dep. Ex. 52). Marx then countered in a February 18,

---

[5] This Court will not credit facts asserted by any party where the cited portion of the record does not support the asserted fact.

2008 email with an offer of an 8% commission for the first $4 million in California sales and a 12.5% commission on "all sales over $4M (retroactive to dollar one)" (Marx 9/8/11 Dep. Ex. 2). That response did not distinguish between new and residual business (id.). On February 21, 2008 Marx forwarded his February 18 email to other McGraw employees and stated "[Kelly] has agreed to the terms below," again making no mention of any difference between new and residual business (id.). Marx testified that he forgot to mention that the commissions were to be paid only on new business, but he claimed that "[a]ll of our discussions assumed it was new sales" (Marx 9/8/11 Dep. 69).

Under Agreement §4.1 McGraw is obligated to pay Kelly a commission on all sales if McGraw "ships directly and issues a bill for the Product during the term of the Agreement, to a school or school district that serves and is located in the Territory" (K. St. ¶12). That provision goes on to state that "no commissions will be paid: (a) on sales to international schools or teacher colleges; or (b) for sales to Edison Schools accounts or to customers designated as 'house accounts' on Appendix B." No similar exclusion is made for commissions on re-orders of McGraw products--that is, orders placed to replenish or supplement a school's inventory of books (id.; K. St. ¶14). Agreement §10.9 is a classic integration provision:

> This Agreement sets forth the entire agreement and understanding between the parties as to the subject matter hereof and supersedes all prior agreements between them. This Agreement will only be amended or waived if the parties specifically agree in writing.

As of July 1, 2008 Kelly's territory for sales of Everyday Mathematic

Products included all of California (K. St. ¶13). In 2009 McGraw sold $1,378,905.69 in re-orders to California schools (none of those sales were made to international schools, teachers' colleges, Edison Schools accounts or house accounts) (id. ¶16). Under the Act any commissions owed to Kelly were payable not later than 13 days following termination of the 2008 Sales Agreement, which ended on December 31, 2009 (id. ¶¶18, 19). Pursuant to Agreement App'x A, Kelly is entitled to an 8% commission on the first $4 million of sales and a 12.5% commission on all sales over $4 million "retroactive back to dollar one." Kelly sold over $4 million of Everyday Mathematics Products during the term of the 2008 Sales Agreement (K. St. ¶20).

Kelly's previous sales contract with McGraw (the "2006 Agreement") ran from January 1, 2006 to December 31, 2007, with sales defined identically to the definition in the 2008 Sales Agreement (K. St. ¶23). Like the 2008 Sales Agreement, its predecessor did not exclude re-orders from the sales on which Kelly was entitled to a commission (2006 Agreement §4.1).

Before 2009 Kelly was paid commissions on re-orders, but in early 2009 McGraw executive Steve Engel directed Tracie Saunders, a financial analyst in charge of calculating and paying commissions, not to pay Kelly further commissions on re-orders (K. St. ¶¶24, 25). After that directive McGraw did not pay Kelly commissions on the $1,378,905.69 of re-orders sold in California during 2009 (id. ¶27). Although Kelly received monthly reports throughout 2009 showing new and re-order sales as well as what commissions he earned, Kelly did not complain about McGraw's failure to pay commissions on the 2009 re-orders until October 27, 2009

(M. St. ¶¶12, 13).

Frank Sokolowski ("Sokolowski") was a sales representative for Kelly in 2008 and 2009 who was responsible for selling McGraw products in northern California (M. St. ¶14). Sokolowski testified that when he asked Kelly whether Kelly would pay him commissions on 2009 re-orders (id. ¶15), Kelly said "no" because Kelly "just gets commission on the initial order" (Sokolowski Dep. 40). As this Court said in its June 5, 2012 opinion, whether or not the parties agreed that Kelly would waive commissions on 2009 re-orders is hotly contested.

Kelly was granted leave to serve requests for admission in this Court's brief February 7, 2012 memorandum opinion (Dkt. 62). But this Court said in n. 2 of that opinion that it "should not be mistaken as a blanket approval of the manner in which Kelly's counsel has framed the requests to admit," and it directed the parties' counsel to "distill the requests down to a reasonable and nonrepetitive number and to iron out any other disputes as to their nature." In a March 9, 2012 email to Kelly's counsel, McGraw's counsel observed that they had not heard anything further regarding the requests to admit and outlined McGraw's objections (M. Resp. Ex. A to Ex. D). After considerable back-and-forth between counsel, McGraw ultimately answered the requests on April 10, 2012 (K. St. Ex. A).

## Interest on Reimbursement

McGraw has paid Kelly the $7,755.16 in statutory prejudgment interest that he requested on the $29,843.30 in expense reimbursement from 2006, mooting that part of Kelly's motion for summary judgment. Count VI is therefore dismissed as

- 7 -

fully resolved.

## Commissions for 2009 Re-orders[6]

To establish a claim for breach of contract under Illinois law, a plaintiff must show "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages" (W.W. Vincent & Co. v. First Colony Life Ins. Co., 351 Ill. App. 3d 752, 759, 814 N.E.2d 960, 967 (1st Dist. 2004)). There is no question here as to elements 1, 2 or 4. Only the third element is at issue -- the parties disagree as to whether the Agreement entitled Kelly to commissions on the 2009 re-orders and, accordingly, about whether McGraw breached the Agreement by not paying those commissions.

Kelly argues that summary judgment should be granted because the Agreement is unambiguous as to the issue of commissions on the 2009 re-orders and that no extrinsic evidence may be considered to contradict the Agreement. Illinois courts apply the "four corners rule" to the interpretation of contracts. As W. Ill. Oil Co. v. Thompson, 26 Ill. 2d 287, 291, 186 N.E.2d 285, 287 (1962) put it:

> An agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence.

More recently Rakowski v. Lucente, 104 Ill. 2d 317, 323, 472 N.E.2d 791, 794 (1984)

---

[6] In diversity cases such as this the Erie v. Tompkins doctrine commands a federal court to apply state substantive law, including the rules of contract interpretation (Bourke v. Dun & Bradstreet Corp., 159 F.3d 1032, 1036 (7th Cir. 1998)). Illinois law applies to this dispute pursuant to Agreement §10.7.

delivered the same message in these terms:

> Where a written agreement is clear and explicit, a court must enforce the agreement as written. Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids.

Those principles impose a sharp curb on the admissibility of extrinsic evidence as to the meaning of unambiguous contractual language (Saddler v. Nat'l Bank of Bloomington, 403 Ill. 218, 228, 85 N.E.2d 733, 740 (1949), also quoted in Rakowski just after the above quotation):

> What the parties to a written contract may have understood as to the meaning of the language used is not admissible in evidence. The intention or understanding of the parties, when there is a written contract in evidence, must be determined not from what the parties thought but from the language of the contract itself.

Only where a contract is facially ambiguous -- meaning that it is susceptible to more than one meaning–may extrinsic evidence be considered (Meyer v. Marilyn Miglin, Inc., 273 Ill. App. 3d 882, 888, 652 N.E.2d 1233, 1238 (1st Dist. 1995).

Here the Agreement is unambiguous. Agreement §4.1 expressly specifies that McGraw will pay Kelly a commission on the defined products whenever McGraw "ships directly and issues a bill for the Product during the term of the Agreement, to a school or school district that serves and is located in the Territory." Even more pointedly, it specifically excludes certain types of sales from commissionability -- "sales to international schools or teacher colleges" and "sales to Edison Schools accounts or to customers designated as 'house accounts' on Appendix

B" -- but commissions on re-orders are conspicuously absent from those exclusions.[7]

And there is more as well. Look at the sequence of events. Kelly offered to forgo commissions on re-orders in exchange for the establishment of a highly favorable commission rate -- 15% across the board on all other sales--together with some added McGraw absorption of sales expense as an added fillip. It runs totally counter to common sense to say, as McGraw does, that a written counterproposal that knocked down Kelly's requested commission rate by over 15% (12.5% rather than 15%) up to as much as 45% (8% rather than 15%) simply "forgot" to include any mention of a purported oral understanding that the much lower commission rates were coupled with the exclusion of re-orders from even a nickel's worth of commissions.

It is just such arguments that have led to the judicial emphasis on the effect of integration clauses such as that in the earlier-quoted Agreement §10.9. When such an integration clause is present in an unambiguous agreement, it conveys the clear message that the contract can be given no other meaning. As <u>Air Safety, Inc. v. Teachers Realty Corp.</u>, 185 Ill. 2d 457, 464, 706 N.E.2d 882, 885 (1999)) teaches:

> [W]here parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence.

In fact, <u>Air Safety</u>, <u>id</u>. at 464-65, 706 N.E.2d at 885 (emphasis in original) next addressed the very situation present here:

---

[7] Appendix B mentions nothing related to commissions on re-orders.

> During contract negotiations, a party may propose terms, conditions, and provisions which are ultimately rejected in order to reach a compromise with the other party. That other party, of course, may do the same. The integration clause makes clear that the negotiations leading to the written contract <u>are not</u> the agreement. Accordingly, considering extrinsic evidence of prior negotiations to create an "extrinsic ambiguity" where <u>both</u> parties <u>explicitly</u> agree that such evidence will <u>not</u> be considered ignores the express intentions of the parties and renders integration clauses null.

Hence the plain meaning of the Agreement must stand–Kelly is entitled to commissions on re-orders.

What does -- or can -- McGraw offer up to counter that inexorable conclusion? It urges this Court to reform -- to rewrite -- the parties' unambiguous written contract to reflect their purported intention that Kelly was not to receive commission on 2009 re-orders. McGraw does not dispute that the plain language of the Agreement is to the contrary -- instead it argues (1) that the parties' prior negotiations manifested their intent that Kelly was to receive no commissions on the 2009 re-orders and (2) that the absence of the provision in the written contract is attributable to a "mutual mistake."[8]

In an action for reformation, the moving party has the burden of proving (<u>Bd. of Trs. of Univ. of Ill. v. Ins. Corp. Of Ir.</u>, 750 F. Supp. 1375, 1383 (N.D. Ill. 1990), quoting <u>Sheldon v. Colonial Carbon Co.</u>, 116 Ill. App. 3d 797, 800, 452 N.E.2d 542,

---

[8] While extrinsic evidence may not be introduced to contradict the plain meaning of an unambiguous contract (as already discussed), in a reformation action parol evidence -- but only clear and convincing evidence -- is admissible to show mutual mistake (<u>Brady v. Prairie Material Sales, Inc.</u>, 190 Ill. App. 3d 571, 578, 546 N.E.2d 802, 807 (2d Dist. 1989)).

544-45 (1st Dist. 1983)):

> by very strong, clear and convincing evidence that there has been a meeting of the minds resulting in an actual agreement between the parties; but, at the time the agreement was reduced to writing and executed, some agreed-upon provision was omitted or one not agreed upon was inserted either through mutual mistake or through mistake by one party and fraud by the other.[9]

As the ensuing analysis shows, McGraw falls woefully short of meeting that standard.

McGraw argues that both parties came to an understanding during the course of contract negotiations that Kelly would receive no commissions on 2009 re-orders. According to McGraw, the failure to include that provision in the contract was merely a mistake. But the evidence that it proffers fails to show that <u>both</u> parties understood the contract to exclude commissions on 2009 re-orders. It rather reflects -- if McGraw's ipse dixit is credited, that is -- a unilateral mistake on McGraw's part. And it has long since been established under Illinois law that a unilateral mistake is not grounds for the reformation of a contract (<u>Jonas v. Meyers</u>, 410 Ill. 213, 224, 101 N.E.2d 509, 514-15 (1951)).

McGraw's principal contention is grounded on Kelly's earlier-discussed original offer to waive commissions on 2009 re-orders. But this opinion has already reviewed the ensuing sequence of events -- Marx's rejection of Kelly's proposal and his counteroffer of a much lower commission rate package that was totally silent on

---

[9] [Footnote by this Court] McGraw contends only that there was a mutual mistake. It makes no assertion of fraud.

the subject of waiver. McGraw somehow misses the irony of its argument for an asserted "meeting of the minds" on a new package that included an unmentioned waiver when its own negotiator's mind says he <u>forgot</u> the purported waiver. Such inherently contradictory metaphysics are not the stuff of which business contracts are fashioned.[10]

McGraw also argues that Kelly's failure to object immediately when he first saw the monthly commission reports excluding commissions on 2009 re-orders means that he understood the re-orders to be excluded. But Kelly testified that the relevant re-orders would not have been processed until August or September 2009 and that he began making inquiries to McGraw's accounting office about the re-orders in late October of the same year (Kelly 6/29/11 Dep. 145). Kelly added that the reason that he did not take more aggressive action on the issue immediately was that he was "not trying to raise a high profile because we were working towards the written contract of 2010" (<u>id.</u> at 146). In addition to those factual (and practical) considerations, as a legal matter the non-waiver clause in Agreement §10.9 obviated any need for Kelly to make immediate protest in order to assert his contract rights later.

McGraw lastly cites the testimony of Frank Sokolowski that Kelly told him

---

[10] McGraw points out that Kelly will end up making more money on the now 8%/12.5% scheme including re-orders than he would have under a 15% scheme excluding re-orders. Maybe so, but that would appear to demonstrate Kelly's prowess as a salesman (which, not incidentally, enhanced McGraw's own profits on the higher sales volume), rather than proving that at the time of the contract signing Kelly understood his contract to exclude re-orders.

- 13 -

that "he just gets commission on the initial order" (Sokolowski 11/02/11 Dep. 40).[11] Sokolowski did not know when that asserted conversation took place, testifying only that it was "between 2008 and 2010" and providing no information about where the conversation took place or who else was present (id.). And it is surely less than certain that the alleged statement (if indeed admissible under Fed. R. Evid. 801(d)(2)(D)) in light of its deficiencies) was an acknowledgment that Kelly was not <u>entitled</u> to the commissions (see n. 11) as opposed to merely saying that he was not in fact <u>receiving</u> the commissions.

But what controls on this issue in any event is that the combination of the just-discussed item and the other snippets that McGraw has cobbled together on the subject of a purported <u>mutual</u> mistake simply does not aggregate to the "very strong, clear and convincing evidence" demanded by such cases as <u>Sheldon</u> to demonstrate the existence of a mutual mistake.[12] Reformation is thus clearly unfounded.

---

[11] McGraw's counsel distorts that language in its M. St. ¶15, wrongfully (and impermissibly) converting it to a damaging statement that Kelly said he would not pay Sokolowski commissions on reorders "because Kelly <u>was not entitled</u> to commissions from McGraw-Hill on those reorders" (emphasis is added). That is <u>not</u> what Kelly assertedly said, and counsel's misleading rewrite is really disturbing.

[12] What has just been said in the text meshes seamlessly with the summary judgment standard set out at the outset of this opinion. As taught there, on Kelly's motion this Court has drawn all reasonable inferences in favor of McGraw -- the nonmovant in that motion -- including a possible inference from the Sokolowski deposition ascerpts (despite its flaws as to admissability). But any resulting potential tilt in McGraw's direction is totally overcome (and more) by the taxing requirements imposed by Illinois on any reformation of unambiguous contractual provisions.

So McGraw has come to the end of its road (or roads), and each terminates in a dead end. It is clear that the Agreement entitled Kelly to commissions on the 2009 re-orders and that those commissions have not been paid. Kelly has met all elements of a claim for breach of contract, and there are no genuine issues of material fact remaining.

Accordingly Kelly's motion for summary judgment as to those unpaid commissions is granted, and McGraw's cross-motion for summary judgment is denied. McGraw is therefore ordered to pay Kelly $172,363, the amount due on commissions from the 2009 re-orders.

## Requests To Admit

In light of the just-stated ruling, it is unnecessary to address the procedural arguments offered by both parties regarding Kelly's requests to admit. Any motion that the court computer lists as "pending" in that respect is denied as moot.

## Prejudgment Interest

Kelly also seeks an award of prejudgment interest on the withheld commissions at a rate of 5% per annum pursuant to the Illinois Interest Act, 815 ILCS 205/2. That statute applies to claims on written contracts such as the Agreement (Servbest Foods, Inc. v. Emessee Indus., Inc., 82 Ill. App. 3d 662, 677, 403 N.E.2d 1, 13 (1st Dist. 1980)). And that is so "even though a good faith defense exists, and even when the claimed right and the amount due require judicial ascertainment" (Fabe v. Facer Ins. Agency, Inc., 773 F.2d 142, 146-47 (7th Cir. 1985)).

Here, although McGraw contested its obligation to pay the commissions on the 2009 re-orders, it does not quarrel with the claimed amount of those commissions: $172,363. It must pay interest to Kelly on that amount pursuant to the Interest Act. Kelly is ordered on or before August 24 to submit a calculation of the interest that will be due on August 31, 2012.

## Attorney's Fees

Finally, Kelly seeks leave to file a petition for attorney's fees pursuant to Illinois Sales Representative Act §3 (820 ILCS 120/3, emphasis added):

> A principal who fails to comply with the provisions of Section 2 concerning timely payment or with any contractual provision concerning timely payment of commissions due upon the termination of the contract with the sales representative, shall be liable in a civil action for exemplary damages in an amount which does not exceed 3 times the amount of the commissions owed to the sales representative. <u>Additionally, such principal shall pay the sales representative's reasonable attorney's fees and court costs</u>.

But this opinion, limited as it is to addressing Kelly's Count I breach of contract claim, has not made the finding of a statutory violation that is required to bring the quoted statute into play. Before fees are awarded under that section there must first be a finding that the Act was violated (<u>Maher & Assocs., Inc. v. Quality Cabinets</u>, 267 Ill. App. 3d 69, 81, 640 N.E.2d 1000, 1009 (2d Dist. 1994)). Hence Kelly's request for leave to file a petition for attorney's fees is denied without prejudice to its possible reassertion at a future date.

## Conclusion

For the reasons stated in this opinion, (1) Count VI is dismissed, (2) Kelly's

motion for summary judgment on Count I is granted, (3) McGraw's cross-motion for summary judgment on Count I is denied, (4) Kelly's request for prejudgment interest is granted and (5) his request for leave to file a petition for attorney's fees is denied as premature. This Court will await input from Kelly as to whether a Fed. R. Civ. P. 54(b) determination of finality is called for as to Count I together with prejudgment interest. And finally, this action is set for a status hearing at 9 a.m. September 11, 2012 to discuss further procedings in the case.

                                                 Milton I. Shadur
                                                 Senior United States District Judge

Date: August 17, 2012